20-339-cv(L)

In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2021

(Argued: March 16, 2022          Decided:    March 15, 2023)

Docket Nos. 20-339(L), 20-340(CON),
20-341(CON), 20-342(CON), 20-343(CON), 20-344(CON)

_____

Fikes Wholesale, Inc.,

Plaintiff - Appellant,

Plaintiffs in civil action Photos Etc. Corp. v. Visa U.S.A., Inc. 05-cv-5071JG-JO,
CHS Inc., Leons Transmission Service, Inc., Traditions, Ltd., Plaintiffs in civil
action Parkway Corp. v. Visa U.S.A., Inc. 05-cv-5077 JG-JO, Plaintiffs in civil
action Discount Optics, Inc., et al. v. Visa U.S.A., Inc., et al. 05-cv-5870 JG-JO,
Payless Shoe Source, Inc., Capital Audio Electronics, Inc.,

Plaintiffs - Appellees,

Plaintiffs in civil action Jetro Holding, Inc. et al v. Visa U.S.A., Inc. et al 05-cv-
4520 JG-JO, Plaintiffs in civil action National Association of Convenience Stores
et al v. Visa U.S.A., Inc. et al 05-cv-4521 JG-JO, Plaintiffs in civil action Supervalu
Inc. v. Visa U.S.A. Inc. et al 05-cv-4650 JG-JO, Plaintiffs in civil action Seaway Gas
& Petroleum, Inc. v. Visa U.S.A., Inc. et al 05-cv-4728-JG-JO, Plaintiffs in civil
action Raley's v. Visa U.S.A. Inc. et al 05-cv- 4799 JG-JO, Plaintiffs in civil action
East Goshen Pharmacy, Inc. v. Visa U.S.A., Inc. 05-cv-5073 JG-JO, Plaintiffs in

civil action National Grocers Association et al v. Visa U.S.A., Inc. et al 05-cv- 5207
JG-JO, Plaintiffs in civil action American Booksellers Association v. Visa U.S.A.,
Inc. et al 05-cv-5319 JG-JO, Plaintiffs in civil action Rookies, Inc. v. Visa U.S.A.,
Inc. 05-CV-5069 JG-JO, Plaintiffs in civil action Jasperson v. Visa U.S.A., Inc. 05-
cv-5070 JG-JO, Plaintiffs in Civil action Animal Land, Inc. v. Visa U.S.A., Inc 05-
cv-5074 JG-JO, Plaintiffs in civil action Bonte Wafflerie, LLC v. Visa U.S.A., Inc.
05-cv-5083 JG-JO, Plaintiffs in civil action Broken Ground, Inc. v. Visa U.S.A., Inc.
05-cv-5082 JG-JO, Plaintiffs in civil action Baltimore Avenue Foods, LLC v. Visa
U.S.A., Inc. 05-cv-5080 JG-JO, Plaintiffs in civil action Fairmont Orthopedics &
Sports Medicine, PA v. Visa U.S.A., Inc. 05-cv-5076 JG JO, Plaintiffs in civil action
Tabu Salon & Spa, Inc. v. Visa U.S.A., Inc. 05-cv-5072 JG-JO, Plaintiffs in civil
action Lakeshore Interiors v. Visa U.S.A., Inc. 05-cv-5081JG JO, Plaintiffs in civil
action NuCity Publications, Inc. v. Visa U.S.A., Inc. 05-cv-5075 JG-JO, Plaintiffs in
civil action Hyman v. VISA International Service Association, Inc. 05-cv-5866 JG-
JO, Plaintiffs in civil action Lee et al v. Visa U.S.A. Inc et al 05-cv-3800 JG-JO,
Plaintiffs in civil action Resnick Amsterdam & Leshner P.C. v. Visa U.S.A., Inc. et
al 05-cv-3924 JG-JO, Plaintiffs in civil action Hy-Vee, Inc. v. Visa U.S.A., Inc. et al
05-cv-3925-JG-JO, Plaintiffs in civil action Meijer, Inc. et al v. Visa U.S.A. Inc. et al
05-cv-4131-JG-JO, Plaintiffs in civil action Lepkowski v. Mastercard International
Incorporated et al 05-cv-4974 JG-JO, Plaintiffs in civil action Kroger Co. v. Visa
U.S.A., Inc. 05-cv-5078 JG-JO, Plaintiffs in civil action Fitlife Health Systems of
Arcadia, Inc. v. Mastercard International Incorporated et al 05-cv-5153 JG-JO,
Plaintiffs in civil action Harris Stationers, Inc., et al. v. Visa International Service
Association, et al. 05-cv-5868 JG-JO, Plaintiffs in civil action Dr. Roy Hyman, et al
v. Visa International Service Association, Inc., et al . 05-cv-5866 JG-JO, Plaintiffs
in civil action Performance Labs, Inc. v. American Express Travel Related
Services Co., Inc., et al. 05-cv-5869 JG-JO, Plaintiffs in civil action Leeber Cohen,
M.D. v. Visa U.S.A., Inc., et al. 05-cv-5878 JG-JO, Plaintiffs in civil action G.E.S.
Bakery, Inc. v. Visa U.S.A., Inc., et al. 05-cv-5879 JG-JO, Plaintiffs in civil action
Connecticut Food Association, Inc., et al. v. Visa U.S.A., Inc., et al. 05-cv-5880 JG-
JO, Plaintiffs in Twisted Spoke v. Visa U.S.A., Inc., et al. 05-cv-5881 JG-JO,
Plaintiffs in civil action Lombardo Bros., Inc. v. Visa U.S.A., Inc. 05-5882 JG-JO,
Plaintiffs in civil action Abdallah Bishara, etc. v. Visa U.S.A., Inc. 05-cv-5883 JG-
JO, Plaintiffs in civil action 518 Restaurant Corp. v. American Express Travel
Related Services Co., Inc., et al. 05-cv-5884 JG-JO, Plaintiffs in civil action JGSA,

1       Inc. v. Visa U.S.A., Inc., et al. 05-cv-5885 JG-JO, Plaintiffs in civil action The
2       Kroger Co., et al. v. MasterCard Inc., et al., 06-cv-0039 JG-JO, Plaintiffs in civil
3       action Rite Aid Corporation et al. v. Visa U.S.A., Inc. et al. 05-cv-5352 JG-JO,
4       Plaintiffs in civil action Fringe, Inc. v. Visa, U.S.A., Inc et al 05-cv-4194 JG-JO,
5       Plaintiffs in civil action Bi-Lo, LLC. et al v. Visa U.S.A., Inc et al 06-cv-2532 JG-
6       JO, Plaintiffs in civil action Bi-Lo, LLC. et al v. Mastercard Incorporated et al 06-
7       cv-2534 JG-JO, Plaintiffs in civil action 06-cv-5583, Esdacy, INC. v. Visa USA,
8       INC. et al, QVC, Inc., GMRI, Inc., NATSO, Incorporated, Plaintiffs in civil action
9       BKS. v. Visa U.S.A., Inc. et al 09-cv-2264-JG-JO, Plaintiffs in civil action Gulfside
10       Casino Partnership. v. Visa U.S.A., Inc. et al 09-cv-03225 JG-JO, Keith
11       Superstores, BKS, INC., BKS of LA, Inc. d/b/a KEITH SUPERSTORES, and
12       KEITHCO PETROLEUM, INC., Keithco Petroleum, Inc., BKS, INC., BKS of LA,
13       Inc. d/b/a KEITH SUPERSTORES, and KEITHCO PETROLEUM, INC., National
14       Community Pharmacists Association, National Cooperative Grocers Association,
15       Coborn's Incorporated, D'Agostino Supermarkets, Inc., National Restaurant
16       Association, Affiliated Foods Midwest, Gielen Enterprises, Inc., Rice Palace, Inc.,
17       Tobacco Plus, Inc., CVS Pharmacy, Inc., Plaintiffs in Delta Airlines Inc et all v.
18       Visa Inc et al, 1:13-cv-04766-JG-JO, Cox Communications, Inc., Cox Enterprises,
19       Inc., Cox Media Group, Inc., G6 Hospitality LLC, Live Nation Entertainment,
20       Inc., Manheim Inc., Motel 6 Operating LP, E-Z Mart Stores, Inc., Jacksons Food
21       Stores, Inc./PacWest Energy LLC, Kum & Go, L.C., Sheetz, Inc., Susser Holdings
22       Corporation, The Pantry, Inc., Plaintiffs in Target Corporation, et al. v. Visa Inc.,
23       et al., 13-cv-03477, DSW Inc., Jetblue Airways Corporation, Plaintiffs in Civil
24       Action 7-Eleven Inc., et al. v. Visa Inc. et al, 1:13-cv-05746-JG-JO, Minnesota
25       Twins LLC, Crystal Rock LLC, Plaintiffs in Civil Action Target Corporation, et al.
26       v. Visa Inc. et al., 13-cv-4442, Plaintiffs in civil action Publix Supermarkets, Inc. v.
27       Visa U.S.A. Inc et al 05-cv-4677 - JG-JO, Plaintiffs in civil action LDC, Inc. v. Visa
28       U.S.A., Inc., et al 05-cv-5871 JG-JO, Robersons Fine Jewlery, Inc., Sunoco, Inc.
29       (RM), Einstein Noah Restaurant Group, Inc., Furniture Row BC, Inc., Google,
30       Inc., Google Payment Corporation, Bass Pro Group, LLC, American Sportsman
31       Holdings Co., Bass Pro Outdoor World, LLC, BPIP, LLC, BPS Direct, LLC, Big
32       Cedar, LLC, Fryingpan River Ranch, LLC,

33

34       Plaintiffs,

35

3

1                      v.

2

3      HSBC Bank USA, N.A., Capital One Bank, Capital One, F.S.B., Capital One

4 Financial Corporation, Wells Fargo & Company, Juniper Financial Corporation,

5      National City Bank of Kentucky, National City Corporation, Mastercard

6 Incorporated, HSBC Finance Corporation, HSBC North America Holdings Inc.,

7 Citibank, N.A., Citigroup Inc., Chase Bank USA, N.A., JPMorgan Chase & Co.,

8      Fifth Third Bancorp, Bank of America, N.A., First National Bank of Omaha,

9 Barclays Financial Corp., Chase Paymentech Solutions, LLC, Visa International

10      Service Association, Visa U.S.A. Inc., Bank of America Corporation, Texas

11    Independent Bancshares, Inc., Wells Fargo Merchant Services, LLC, Visa Inc.,

12     Capital One Bank, (USA), N.A., JP Morgan Chase Bank, N.A., Barclays Bank

13      PLC, Barclays Bank Delaware, MBNA America Bank, N.A., HSBC Finance

14    Corporation, HSBC Holdings PLC, HSBC North America Holdings, Inc, PNC

15 Financial Services Group, Inc., SunTrust Bank, Suntrust Banks Inc, Wells Fargo

16 Bank, N.A., Wachovia Corporation, Wachovia Bank, National Association, BA

17 Merchant Services LLC, FKA National Processing, Inc., FIA Card Services, N.A.,

18          Mastercard International Incorporated,

19

20             Defendants - Appellees,

21

22 Defendants in civil action Jetro Holding, Inc. et al v. Visa U.S.A., Inc. et al 05-cv-

23     4520 JG-JO, Defendants in civil action National Association of Convenience

24    Stores et al v. Visa U.S.A., Inc. et al 05-cv-4521 JG-JO, Defendants in civil action

25      Supervalu Inc. v. Visa U.S.A. Inc. et al 05-cv-4650 JG-JO, Defendants in civil

26      action Publix Supermarkets, Inc. v. Visa U.S.A. Inc. et al 05-cv-4677-JG-JO,

27 Defendants in civil action Seaway Gas & Petroleum, Inc. v. Visa U.S.A., Inc. et al

28   05--cv-4728 JG-JO, Defendants in civil action Raley's v. Visa U.S.A. Inc. et al 05-

29    cv-4799- JG-JO, Defendants in civil action East Goshen Pharmacy, Inc. v. Visa

30      U.S.A., Inc 05-cv-5073-JG-JO, Defendants iin civil action National Grocers

31   Association et al v. Visa U.S.A., Inc. et al 05-cv- 5207 JG -JO, Defendants in civil

32 action American Booksellers Association v. Visa U.S.A., Inc. et al 05-cv-5319 JG -

33 JO, Defendants in civil action Rookies, Inc. v. Visa U.S.A., Inc. 05-cv-5069-JG-JO,

34      Defendants in civil action Jasperson v. Visa U.S.A., Inc. 05-cv-5070-JG-JO,

35   Defendants in civil action Animal Land, Inc. v. Visa U.S.A., Inc. 05-cv-5074-JG-

JO, Defendants in civil action Bonte Wafflerie, LLC v. Visa U.S.A., Inc. 05-cv-5083
JG-JO, Defendants in civil action Broken Ground, Inc. v. Visa U.S.A., Inc. 05-cv-
5082 JG-JO, Defendants in civil action Baltimore Avenue Foods, LLC v. Visa
U.S.A., Inc. 05-cv-5080 JG-JO, Defendants in civil action Fairmont Orthopedics &
Sports Medicine, PA v. Visa U.S.A., Inc. 05-cv-5076-JG-JO, Defendants in civil
action Tabu Salon & Spa, Inc. v. Visa U.S.A., Inc. 05-cv-5072 -JG-JO, Defendants
in civil action Lakeshore Interiors v. Visa U.S.A., Inc. 05-cv-5081 JG-JO,
Defendants in civil action Parkway Corp. v. Visa U.S.A., Inc. 05-cv-5077-JG-JO,
Defendants in civil action Hyman v. VISA International Service Association, Inc.
05-cv-5866 JG -JO, Defendants in civil action Lee et al v. Visa U.S.A. Inc. et al 05-
cv-03800, Defendants in civil action Resnick Amsterdam & Leshner P.C. v. Visa
U.S. A, Inc. et al, 05-cv-3924 JG-JO, Defendants in civil action Hy-Vee, Inc. v. Visa
U.S.A., Inc. et al 05-cv-03925 JG-JO, Defendants in civil action Meijer, Inc. et al v.
Visa U.S.A. Inc. et al 05-cv-4131 JG-JO, Defendants in civil action Lepkowski v.
Mastercard International Incorporated et al 05-cv-4974-JG-JO, Defendants in civil
action Photos Etc. Corp. v. Visa U.S.A., Inc. 05-cv-5071-JG-JO, Defendants in civil
action Kroger Co. v. Visa U.S.A., Inc. 05-cv-5078 JG-JO, Defendants in civil case
Fitlife Health Systems of Arcadia, Inc. v. Mastercard International Incorporated
et a 05-cv-5153 JG -JO, Defendants in civil action Rite Aid Corporation et al. v.
Visa U.S.A., Inc. et al. 05-cv-5352 JG-JO, Defendants in civil action The Kroger
Co., et al. v. MasterCard Inc., et al., 06-cv-0039 JG-JO, Defendants in civil action
Harris Stationers, Inc., et al. v. Visa International Service Association, et al. 05-cv-
5868 JG-JO, Defendants in civil action Dr. Roy Hyman, et al. v. Visa International
Service Association, Inc., et al. 05-cv-5866, Defendants in civil action Performace
Labs, Inc. v. American Express Travel Related Services Co., Inc., et al 05-cv-5869
JG-JO, Defendants in civil action Discount Optics, Inc., et al. v. Visa U.S.A., Inc.,
et al. 05-cv-5870 JG-JO, Defendants in civil action LDC, Inc. v. Visa U.S.A., Inc. et
al. 05-cv-5871 JG-JO, Defendants in civil action G.E.S. Bakery, Inc. v. Visa U.S.A.,
Inc,. et al. 05-cv-5879 JG-JO, Defendants in civil action Leeber Cohen, M.D. v.
Visa U.S.A., Inc., et al. 05-cv-5878 JG-JO, Defendants in civil action Connecticut
Food Association, Inc., et al. v. Visa U.S.A., Inc., et al 05-cv-5880 JG-JO,
Defendants in civil action Twisted Spoke v. Visa U.S.A., Inc., et al. 05-cv-5881 JG-
JO, Defendants in civil action Lombardo Bros., Inc. v. Visa U.S.A., Inc. 05-cv-5882
JG-JO, Defendants in civil action Abdallah Bishara, etc. v. Visa U.S.A., Inc. 05-cv-
5883 JG-JO, Defendants in civil action 518 Restaurant Corp. v. American Express

5

Travel Related Services Co., et al. 05-cv-5884 JG-JO, Defendants in civil action
JGSA, Inc. v. Visa U.S.A., Inc., et al 05-cv-5885, Defendants in civil action Fringe,
Inc. v. Visa, U.S.A., Inc. et al 05-cv-4194 JG-JO, Defendants in civil action Bi-Lo,
LLC. et al v. Visa U.S.A., Inc. et al 06-cv-2532 JG-JO, Defendants in civil action Bi-
Lo, LLC. et al v. Visa U.S.A., Inc. et al 06-cv-2534 JG-JO, Defendants in civil action
06-cv-5583, Esdacy, INC. v. Visa USA, INC. et al, Washington Mutual, Inc.,
Defendants in civil action BKS. v. Visa U.S.A., Inc. et al 09-cv-2264-JG-JO,
Wachovia Corporation, Wachovia Bank, National Association, Defendants in
civil action Gulfside Casino Partnership. v. Visa U.S.A., Inc. et al 09-cv-03225 JG-
JO, Landers Harley-Davidson Little Rock, Sears Holdings Management
Corporation, Discover Financial Services, Newport European Motorcars, Ltd.
Newport Beach, California, Newport European Motorcars, Ltd. Newport Beach,
California, Dennis D Gibson, Unlimited Vacations and Cruises Inc., Top Gun
Wrecker, Orange County Bldg Materials, Bishop, DBA Hat & Gown, Enterprise
Holdings, Inc., Ragland Bros. Retail Cos., Inc., ABP Corporation, NJ Applebee's
(Paramus), River Valley Market, LLC, Durango Natural Foods, The Real Good
Fashion Store, Inc., Paymentech, LLC, LAJ, Inc., DBA Grapevine Wines an
Spirits, Lane Courkamp, Premier Enterprises Group, Class Action Recovery
Service, Discover, Refund Recovery Services, LLC, Electronic Payment Systems,
LLC, Daviss Donuts and Deli, Jonbro, Visa Europe Limited, Visa Europe Services
Inc., Chase Manhattan Bank USA, N.A., Citibank (South Dakota), N.A., BA
Merchant Services LLC, FKA National Processing, Inc., FIA Card Services, N.A.,
Bass Pro Shops White River Conference and Education Center, LLC, SunTrust
Bank Holding Company,

Defendants,

v.

Jack Rabbit LLC, Cahaba Heights Service Center, Inc., DBA Cahaba Heights
Chevron, R & M Objectors, Falls Auto Gallery, DBA Falls Car Collection,
Gnarlywood LLC, Quincy Woodrights, LLC, Kevan McLaughlin, Unlimited
Vacations and Cruises Inc., Pets USA LLC, Slidell Oil Company, LLC, National
Association of Shell Marketers, Inc., Petroleum Marketers Association of
America, Midwest Petroleum Company, Society of Independent Gasoline

Marketers of America,

Objectors - Appellants.

_____

Before: JACOBS, LEVAL, and PARK, <u>Circuit Judges</u>.

A putative class of over 12 million merchants brought this antitrust action under the Sherman Act against Visa U.S.A. Inc., MasterCard International Inc., and numerous banks that serve as payment-card issuers for those networks. Plaintiffs alleged that Visa and MasterCard adopted and enforced rules and practices relating to payment cards that had the combined effect of injuring merchants by allowing Visa and MasterCard to charge supracompetitive fees (known as "interchange fees") on each payment card transaction. After nearly fifteen years of litigation, the parties agreed to a settlement of roughly $5.6 billion, which was approved by the United States District Court for the Eastern District of New York (Brodie, <u>C.J.</u>) over numerous objections. In so doing, $900,000 in service awards was granted to lead plaintiffs, and roughly $523 million was granted in attorneys' fees.

1    The appellants are various objectors who argue that the district court erred

2    when it certified the class, approved the settlement, granted service awards and

3    computed attorneys' fees.

4    We conclude that these arguments are without merit and therefore

5    AFFIRM the district court's orders in all respects, except as noted below.

6    The opinion of the Court is unanimous.  Judge Jacobs and Judge Leval

7    each concur in separate opinions.

8    _____

9    NATHANIEL A. TARNOR, Hagens
10   Berman Sobol Shapiro LLP, New York, NY
11   (Steve W. Berman, Hagens Berman Sobol
12   Shapiro LLP, Seattle, WA, on the brief), for
13   Objectors-Appellants Fikes Wholesale, Inc.,
14   et al.
15
16   N. ALBERT BACHARACH, JR. (Paul S.
17   Rothstein, on the brief), Gainesville, FL, for
18   Objectors-Appellants Jack Rabbit, LLC, et
19   al.
20
21   KENDRICK JAN, San Diego, CA, for
22   Objectors-Appellants Gnarlywood LLC, et
23   al.
24
25   JOHN J. PENTZ, Sudbury, MA, for
26   Objectors-Appellants Pets USA LLC, et al.
27

| | |
|---|---|
| 1 | C. Benjamin Nutley, Pasadena, CA, and |
| 2 | John W. Davis, Tampa, FL, <u>for Objector-</u> |
| 3 | <u>Appellant Kevan McLaughlin</u>. |
| 4 | |
| 5 | PATRICK J. COUGHLIN, (Joseph D. Daley, |
| 6 | Alexandra S. Bernay, and Carmen A. |
| 7 | Medici, <u>on the brief</u>) Robbins Geller |
| 8 | Rudman & Dowd LLP, San Diego, CA; K. |
| 9 | Craig Wildfang, Thomas J. Undlin, Ryan |
| 10 | W. Marth, Robins Kaplan LLP, |
| 11 | Minneapolis, MN; H. Laddie Montague, Jr., |
| 12 | Merrill G. Davidoff, Michael J. Kane, Berger |
| 13 | Montague PC, Philadelphia, PA, <u>for</u> |
| 14 | <u>Plaintiffs-Appellees</u>. |
| 15 | |
| 16 | KANNON K. SHANMUGAM (Kenneth A. |
| 17 | Gallo, Jessica Anne Morton, Stacie M. |
| 18 | Fahsel, <u>on the brief</u>) Paul, Weiss, Rifkind, |
| 19 | Wharton & Garrison LLP, Washington, DC; |
| 20 | Gary R. Carney, Elyssa E. Abuhoff, Paul, |
| 21 | Weiss, Rifkind, Wharton & Garrison LLP, |
| 22 | New York, NY, <u>for Defendants-Appellees</u>. |
| 23 | |
| 24 | |

25 DENNIS JACOBS, <u>Circuit Judge</u>:

27  A putative class of over 12 million merchants brought this antitrust action

28 under the Sherman Act against Visa U.S.A. Inc. ("Visa"), MasterCard

29 International Inc. ("MasterCard"), and numerous banks that serve as payment-

30 card issuers for those networks. Plaintiffs alleged that Visa and MasterCard

31 adopted and enforced rules and practices relating to payment cards that had the

1    combined effect of injuring merchants by allowing Visa and MasterCard to

2    charge supracompetitive fees (known as "interchange fees") on each payment

3    card transaction.  After nearly fifteen years of litigation, the parties agreed to a

4    settlement of roughly $5.6 billion, which was approved by the United States

5    District Court for the Eastern District of New York (Brodie, C.J.) over numerous

6    objections.  In so doing, $900,000 in service awards was granted to lead plaintiffs,

7    and roughly $523 million was granted in attorneys' fees.

8        The appellants are various objectors who argue that the district court erred

9    when it certified the class, approved the settlement, granted service awards and

10    computed attorneys' fees.[1]

11        We conclude that these arguments are without merit and therefore

12    AFFIRM the district court's orders in all respects, except as noted below.

13

---

[1] We refer to "Appellants" plural, regardless of whether a point was advanced by one objector-appellant or more.

10

1                                **BACKGROUND**

2                                       **I**

3       It is well known that Visa and MasterCard operate two of the world's

4 largest payment-card networks.  An understanding of this case requires some

5 knowledge of how those networks operate.  In brief: the customer presents a

6 payment card to the merchant; the merchant relays the card information to its

7 bank (the acquiring bank); the acquiring bank forwards that information to the

8 appropriate network (Visa or MasterCard); the network relays the information to

9 the bank that issued the customer's card (the issuing bank); and the issuing bank

10 confirms that the customer has sufficient credit or funds to cover the purchase.  .

11 When these steps are completed, the issuing bank transmits its approval back

12 through the chain to the acquiring bank, which relays it to the merchant at the

13 point of sale.

14       Next, the issuing bank provides the funds via the appropriate network to

15 the acquiring bank, less the "interchange fee" (the focus of this litigation) which

16 the issuing bank – a member of the Visa or MasterCard network - keeps.    While

17 the issuing and acquiring banks are contractually free to agree on an applicable

18 interchange fee, Visa and MasterCard each set a default fee in the absence of such

1    an agreement.  The acquiring bank, in turn, pays the merchant while charging

2    what is known as a "merchant discount fee."  That fee covers the interchange

3    fee as well as an additional amount that compensates the acquiring bank for

4    processing the transaction.  The applicable default fee varies depending on

5    factors that include the type of payment card.

6         Merchants who accept Visa- and MasterCard-branded cards are bound by

7    the issuers' network rules, which in effect are identical to one another.  For

8    example, the "honor-all-cards" rules require any merchant that accepts a Visa- or

9    MasterCard-branded credit card to accept all credit cards of that brand,

10    regardless of the differences in interchange fees.  Further, multiple rules

11    prohibit merchants from influencing customers to use one type of payment over

12    another--such as a credit card with a lower interchange fee, or cash rather than

13    credit.  These "anti-steering" rules include the "no-surcharge" and "no-discount"

14    rules, which prohibit merchants from charging different prices at the point of

15    sale depending on the means of payment.

16

1    **II**

2    Numerous antitrust lawsuits were filed against Visa and MasterCard

3    beginning in 2005.  The first consolidated complaint in this action (which was

4    followed by several amended complaints) was filed the following year.    The

5    then-operative complaints alleged that the Visa and MasterCard interchange

6    fees, and associated rules, were anticompetitive and violated the Sherman Act, 15

7    U.S.C. §§ 1 and 2, and California's Cartwright Act, Bus. & Prof. Code § 16700 et

8    seq.

9    Prolonged negotiation resulted in a "2012 Settlement Agreement."

10    Consistent with the then-operative complaint, the proposed settlement divided

11    the plaintiffs into two classes.  The first--the Rule 23(b)(3) damages class--covered

12    merchants that accepted Visa and/or MasterCard from January 1, 2004 to

13    November 27, 2012.  The second--the Rule 23(b)(2) injunction class--covered

14    merchants that accepted (or would accept) Visa and/or MasterCard on or after

15    November 27, 2012.  The 23(b)(3) class was set to receive roughly $5.3 billion,

16    after opt-out payments.  The 23(b)(2) class would receive injunctive relief in the

17    form of changes to Visa's and MasterCard's network rules.  While members of

13

1  the (b)(3) damages class could opt out, members of the (b)(2) injunction class

2  could not.  The same counsel represented both classes.

3       The settlement agreement was given preliminary approval in late 2012.

4  Final approval by the district court came roughly a year later.

5

6                                        **III**

7       On June 30, 2016, we held that the members of the (b)(2) injunction class

8  received inadequate representation, in violation of the Due Process Clause and

9  Rule 23(a)(4) of the Federal Rules of Civil Procedure, because, despite their

10  divergent interests, they were represented by the same counsel and lead

11  plaintiffs as the (b)(3) damages class.  See In re Payment Card Interchange Fee &

12  Merch. Disc. Antitrust Litig., 827 F.3d 223, 233-34 (2d Cir. 2016).  Specifically, we

13  explained that the interest of the (b)(3) class members was in "maximiz[ing] cash

14  compensation for past harm," while the interest of the (b)(2) class members was

15  in "maximiz[ing] restraints on network rules to prevent harm in the future."  Id.

16  at 233.  This conflict disadvantaged the (b)(2) injunction class, we concluded,

17  because "[t]he class counsel and class representatives who negotiated and

18  entered into the [2012] Settlement Agreement were in the position to trade

14

1   diminution of (b)(2) relief for increase of (b)(3) relief." Id. at 234.  Accordingly,

2   we vacated the district court's certification of the settlement class, reversed

3   approval of the 2012 Settlement Agreement, and remanded for further

4   proceedings.  Id. at 240.

5

6                                          **IV**

7          On remand, the district court appointed the three law firms that had

8   previously served as class counsel (together, "Class Counsel") to serve as interim

9   counsel only for the Rule 23(b)(3) damages class.[2]  About two years later, after

10  additional discovery and renegotiation, the parties executed this new settlement

11  agreement (the "Settlement Agreement"), which provides for a collective award

12  of $5.6 billion (as reduced in the amount of $700 million to reflect opt-outs).  The

13  district court granted preliminary approval on January 24, 2019, and final

14  approval on December 13, 2019.

---

[2] The district court also appointed separate counsel to represent a proposed
injunctive-relief class seeking certification under Rule 23(b)(2).  The (b)(2) action
is now proceeding as DDMB, Inc. v. Visa, Inc., No. 05-md-1720.

1    The Settlement Agreement defines the class as "all persons, businesses,

2    and other entities that have accepted any Visa-Branded Cards and/or

3    Mastercard-Branded Cards in the United States at any time from January 1, 2004

4    to the Settlement Preliminary Approval Date [January 24, 2019]."  App'x at 3324

5    ¶ 4.  The definition expressly excludes, among others, the "Dismissed Plaintiffs,"

6    a defined term referring to roughly 200 merchants (and their related entities) that

7    had opted out of the initial settlement and separately settled their claims.  Id. at

8    3316 ¶ 3(t), 3324-25 ¶ 4.  The Settlement Agreement provides that each claimant

9    will receive a pro rata share of the monetary fund "in accordance with the

10   relative economic interests of the Claimants as measured by the Interchange Fee

11   amounts attributable to their Visa- and Mastercard-Branded Card transactions

12   during the Class Period."  Id. at 3567.

13   In exchange for this cash, each class member released claims "arising out

14   of or relating to" any conduct or acts that were or could have been alleged in the

15   litigation.  Id. at 3337 ¶ 31(a).  That release covers all claims that have accrued

16   during the class period, or that will "accrue no later than five years after the

17   Settlement Final Date," id., which is defined as the date on which appeals from

18   the Settlement Agreement become final, id. at 3321-22 ¶ 3(ss).

16

1    The release "extend[s] to, but only to, the fullest extent permitted by

2    federal law." Id. at 3337 ¶ 31(a). The parties have stated, in the district court and

3    on appeal, that this language is intended to comport with the "identical factual

4    predicate" test, i.e., that a settlement may validly release claims "that would have

5    to be based on the identical factual predicate as that underlying the claims in the

6    settled class action." TBK Partners, Ltd. v. Western Union Corp., 675 F.2d 456,

7    460 (2d Cir. 1982). See Defendants-Appellees Br. at 52; Plaintiffs-Appellees Final

8    Approval Br. at 63; App'x at 4424. The district court so construed the Settlement

9    Agreement in granting approval. In re Payment Card Interchange Fee & Merch.

10   Disc. Antitrust Litig., No. 05-md-1720, 2019 WL 6875472, at *23-25 (E.D.N.Y. Dec.

11   16, 2019) ("Final Approval").

12       Because of the dispute described below between integrated oil companies

13   and their franchised service stations operating under the trademark of the

14   franchisor, contesting which should receive the settlement funds allocated to

15   customers using payment cards to purchase primarily gasoline, the district court

16   determined to appoint a special master to study and determine the question,

17   subject to de novo review by the district court.

17

1    After granting final approval of the Settlement Agreement, the district

2    court awarded Class Counsel 9.31% of the settlement fund in attorneys' fees,

3    approximately $523 million.  See In re Payment Card Interchange Fee & Merch.

4    Disc. Antitrust Litig., No. 05-md-1720, 2019 WL 6888488, at *25 (E.D.N.Y. Dec. 16,

5    2019).  This award was meant to reflect, among other things, the "enormous

6    number of hours and many years" devoted to the case, id. at *10, and the

7    "substantively risky" nature of the litigation, id. at *14.  The award for expenses

8    was $39 million.  See id. at *25.

9    Separately, the district court granted the class representatives $900,000 in

10   service awards, in addition to out-of-pocket expenses.  The district court

11   recognized that "[t]here is no indication that any Class Representative assumed

12   the position or undertook the time and labor they did in anticipation of being

13   compensated," but still granted the award because of the "enormous amount of

14   time and resources" they spent on the case.  App'x at 7456-57.

15   Appellants argue that the district court abused its discretion when it

16   certified the class, approved the settlement, granted service awards and

17   computed attorneys' fees.

18

18

## DISCUSSION

## I

The settlement-only class is defined to include (with limited exceptions) "all persons, businesses, and other entities that have accepted any Visa-Branded Cards and/or Mastercard-Branded Cards in the United States at any time from January 1, 2004 to [January 24, 2019]." App'x at 3324 ¶ 4. A controversy over the class definition exists between integrated oil companies (e.g., Shell, Chevron, and Valero) and their branded service stations--i.e., between franchisors and their franchisees--both of which claim to have been injured by the interchange fees imposed on gas sales and claim to "have accepted" Visa-Branded and MasterCard-Branded cards in payment for sales. Appellants are representatives of the service stations, and raise challenges regarding: (A) ascertainability, (B) adequacy of representation, (C) claims administration, and (D) notice.


## A

The ascertainability challenge hinges on the interpretation of a single word: "accepted." The word "accepted" creates ambiguity. Both the franchisors and the franchisees claim to have "accepted" the payment card from the

1    customers at the service stations.  The franchisees claim to have "accepted" Visa

2    and/or MasterCard from consumers paying for the gasoline dispensed at their

3    stations, while the franchisors claim to have "accepted" the payment cards by,

4    inter alia, providing operating and processing services on the same set of

5    transactions.  The question of which ones accepted the payment cards was not

6    resolved by the district court but was instead set aside for determination by a

7    special master, subject to de novo review by the district court.  Appellants

8    contend that this failure of the settlement agreement renders the class

9    unascertainable, with dire consequences for the settlement.[3]  This is mistaken.

10        Ascertainability requires only that "a proposed class is defined using

11   objective criteria that establish a membership with definite boundaries."  In re

---

[3] There was a question as to whether this unresolved issue might impact appellate jurisdiction.  To obviate any such complications, we remanded pursuant to the procedure set out in United States v. Jacobson, 15 F.3d 19 (2d Cir. 1994), for the district court to consider whether, in the event its disposition of the dispute between service stations and oil companies was deemed not a final judgment, there was no just reason for delay in the appeal of all other issues.  On July 18, 2022, the district court so concluded and certified that the judgment previously entered and appealed from should be considered a partial final judgment in accordance with Rule 54(b) of the Federal Rules of Civil Procedure. In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig., No. 05-md-1720, 2022 WL 2803352 (E.D.N.Y. July 18, 2022).

1    Petrobras Sec., 862 F.3d 250, 269 (2d Cir. 2017).  This definition meets that

2    requirement by providing the timeframe (January 1, 2004 to January 24, 2019)

3    and place (the United States) in which a particular group (entities that have

4    accepted Visa and/or MasterCard) was allegedly harmed.  That is all that is

5    needed.

6         True, the word "accepted" lends itself to ambiguity.  But the district court

7    properly concluded that "the class definition is . . . objectively guided by federal

8    antitrust standards."[4]  Final Approval, No. 05-md-1720, 2019 WL 6875472, at *31;

9    see also In re Motorola Sec. Litig., 644 F.3d 511, 517 (7th Cir. 2011) ("[A]s a

10   general rule, a class definition is interpreted according to the substantive law that

11   provides the basis for the class action.").  In view of those standards, the district

12   court accepted Class Counsel's claim that "they represent only . . . the direct

---

[4] Appellants argue that it is not clear that federal antitrust law should guide the class definition, as the operative complaint also asserts claims under California's Cartwright Act, which expressly allows recovery for indirect payors.  Cal. Bus. & Prof. Code § 16750(a).  But Appellants raised this argument for the first time in their reply brief, thereby waiving it.  See JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V., 412 F.3d 418, 428 (2d Cir. 2005) ("[A]rguments not made in an appellant's opening brief are waived even if the appellant pursued those arguments in the district court or raised them in a reply brief.").

1  purchaser, and not every entity in the payment chain." Final Approval, No. 05-

2  md-1720, 2019 WL 6875472, at *31 (internal quotation marks omitted).[5]  Put

3  differently, the district court found that federal antitrust law clarified that the

4  only entities that could fall within the class definition were those deemed to be

5  direct payors of the challenged fees.

6      Appellants argue that it is not enough for the definition to be discernible:

7  the criteria for class membership must be "administratively feasible," such that

8  identifying the class members "would not require a mini-hearing on the merits of

9  each case." Brecher v. Republic of Arg., 806 F.3d 22, 24-25 (2d Cir. 2015) (internal

10 quotation marks omitted).  Appellants contend that the administrative feasibility

11 requirement is not satisfied in this case, since the dispute over which entity was

12 the direct payor for any given transaction will lead to "hundreds of thousands of

13 mini trials." Jack Rabbit Br. at 64.

---

[5] No party to this appeal disputes that "for any given transaction, only one interchange fee was paid and only one claimant is entitled to recover based on that fee."  Defendants' Br. at 31; see also Jack Rabbit Br. at 38, 55 ("Pursuant to Illinois Brick, there can only be one claim per antitrust injury.").  We therefore accept that interpretation of federal antitrust law for the purposes of this appeal, without opining on its soundness.

1    This argument rests on a faulty premise.  Requiring administrative

2    feasibility is "neither compelled by precedent nor consistent with Rule 23."

3    Petrobras, 862 F.3d at 264.  The only relevant inquiry is whether determinations

4    as to class membership are "objectively *possible*."  Id. at 270.  Appellants do not

5    contend that identifying the direct payor for each transaction is impossible.  So,

6    their ascertainability argument must fail.

7

8                                                      **B**

9          Appellants next contend that the class definition gave rise to an intra-class

10   conflict that left the franchisees without adequate representation.  We are

11   unpersuaded.

12         "Class actions are an exception to the rule that only the named parties

13   conduct and are bound by litigation."  In re Payment Card Interchange Fee &

14   Merch. Disc. Antitrust Litig., 827 F.3d at 231.  "In order to justify a departure

15   from that rule, a class representative must be part of the class and possess the

16   same interest and suffer the same injury as the class members."  Wal-Mart Stores,

17   Inc. v. Dukes, 564 U.S. 338, 348-49 (2011) (internal quotation marks omitted).

18   That principle is secured in part by Rule 23(a)(4), which requires that "the

representative parties . . . fairly and adequately protect the interests of the class."

Fed. R. Civ. P. 23(a)(4).

Appellants argue that the franchisees have been inadequately represented because no class representative has a shared interest in the franchisees' dispute with their franchisors. Such shared interests are necessary to protect the franchisees, Appellants contend, since the loser of the intra-class conflict will be entitled to no recovery, but will still be bound by the settlement's release.

Appellants are confused. The dispute is not over which group of class members will get the recovery; the dispute is over which claimants are within the class. Whoever "accepted" the payment cards is by definition in the class, gets compensation, and is bound by the release; an entity that did not accept the payment is by definition excluded from the class and is not bound by the settlement. See Rothstein v. Am. Int'l Grp., 837 F.3d 195, 204 (2d Cir. 2016) (noting that non-class members "cannot be bound by any orders or judgments entered in respect to the settlement" (internal quotation marks omitted)). The class representatives owe nothing to the losing entities; outsiders are irrelevant.

The district court emphasized that point: "[B]ecause the conflict is not between class members, but between entities disputing who has the right to

1  claim class status, there is no intra-class conflict or inadequate representation;

2  Class Counsel and Class Plaintiffs are not responsible to, and do not represent,

3  the entity that loses the dispute over the right to claim settlement funds." In re

4  Payment Card Interchange Fee & Merch. Disc. Antitrust Litig., 330 F.R.D. 11, 33

5  (E.D.N.Y. 2019) ("Preliminary Approval").  As a result, the district court

6  concluded, there "is a dispute that needs to be resolved," but it "need not be

7  resolved through creation of subclasses or appointing new class representatives

8  or counsel."  Final Approval, No. 05-md-1720, 2019 WL 6875472, at *18.

9      We agree with the district court that the arguments advanced by the

10 franchisees present no reason why the settlement affecting all claimants other

11 than the franchisors and franchisees of integrated oil companies should not be

12 consummated.

13     Until now, there has been no conflict between franchisors and franchisees.

14 To the contrary, they have shared an interest in maximizing the recovery for all

15 class members, which each claims to be.  Going forward, however, franchisors

16 and franchisees will become adverse to each other for resolution of the questions

17 regarding which should be deemed to have accepted the cards and therefore to

18 come within the class and receive settlement funds, and how those funds should

25

1   be allocated,.  It appears that class counsel will be conflicted on those questions.

2   The district court should ensure that franchisors and franchisees will be

3   represented by counsel, enabling each side to present arguments to the special

4   master and the district court as to why they should be favored over the

5   adversary, and enabling them to negotiate toward settlements of the disputes

6   affecting each adverse pair.

7       Whether this will require designations of subclasses and appointment of

8   further counsel to represent them or whether their existing privately retained

9   counsel will adequately serve the needs, we leave to the good judgment of the

10   district court.

11

12                             **C**

13       Appellants next challenge the district court's plan to refer the dispute over

14   class membership to a special master, subject to its <u>de novo</u> review.  Appellants

15   raise three arguments on this score.

16       First: they contend this dispute should have been resolved before class

17   certification because "no class may be certified that contains members lacking

18   Article III standing," and "[t]he class must therefore be defined in such a way

1  that anyone within it would have standing." <u>Denney v. Deutsche Bank AG</u>, 443

2  F.3d 253, 264 (2d Cir. 2006).  This argument stems from the same mistaken belief

3  that this is a dispute between class members rather than a dispute over class

4  membership.  And there is nothing unusual about a special master identifying

5  that entity after settlement approval.  <u>See</u> <u>Rothstein</u>, 837 F.3d at 199, 201-02

6  (noting that class membership was determined after settlement approval);

7  <u>Motorola</u>, 644 F.3d at 515 (same).

8        Second: they contend that the claims process is fundamentally unfair

9  because it will necessarily result in one group receiving nothing and yet releasing

10  all its claims.  As discussed above, however, that is just not so.  Excluded entities

11  would not be bound by the settlement.

12        Third: they contend that the contemplated special master process is too

13  vague, complicated, and adversarial to be appropriate under Rule 23.  This

14  vagueness argument rests on a series of open questions as to how the special

15  master will go about identifying direct payors--<u>e.g.</u>, whether the special master

16  will allow legal briefs or expert testimony.  But logistics can be worked out in

17  time.  The district court provided the only marching order that matters: that the

special master identify the direct payor or payors in any given transaction.[6]  That

is enough for now.

As to the complicated and adversarial nature of the impending special

master proceedings, special masters have been frequently tasked with deciding

antitrust standing issues at the summary judgment stage.  These are tough and

hotly disputed issues.  But district courts with loaded dockets may rely on

special masters to decide thorny things.  With respect to the restrictions imposed

by Rule 53(a)(1)(C) on circumstances in which special masters may be appointed,

limiting appointment to matters that "cannot be effectively and timely addressed

by an available district judge or magistrate judge," we have no reason to doubt

that the district court complied with its obligations.  Fed. R. Civ. P. 53(a)(1)(C). [7]

_____

[6] This fact distinguishes this case from the one that Appellants rely upon, in which the Fifth Circuit held that that a mandatory limited-fund settlement of tort claims required decertification because the district court punted, *without any guidance*, "the difficult question of equitable distribution . . . to the special master." In re Katrina Canal Breaches Litig., 628 F.3d 185, 194 (5th Cir. 2010).

[7] Appellants contend that special masters are most useful at determining quantitative issues, but "[w]hen the issues referred to a master go beyond hard-to-measure damages or an accounting . . . the waters grow more turbid." Stauble v. Warrob, Inc., 977 F.2d 690, 694 (1st Cir. 1992).  That observation was made in reference to a prior version of Rule 53, which provided that "in actions to be tried

1    In affirming the district court's decision, of course, we are not granting blanket

2    approval to any future decision made by the special master.  Decisions by the

3    special master will be reviewable <u>de novo</u> by the district court and, in turn,

4    reviewable by us on appeal.

5

6                                            **D**

7         The final objection is raised on behalf of franchisees who had been

8    designated "Dismissed Plaintiffs," a term defined in the Settlement Agreement to

9    include entities that opted out via a separate agreement.  The problem first raised

10   at the preliminary settlement hearing was that some or all of the franchisors that

11   settled separately had included their franchisees in the release.  The franchisees

12   contested their dismissed status on the grounds that the franchisors lacked

13   authority to release their claims and that, in any event, some of them dealt with

_____

without a jury, save in matters of account and of difficult computation of damages, a reference [to a special master] shall be made only upon a showing that some *exceptional condition* requires it."  Fed. R. Civ. P. 53(b) (as amended Apr. 30, 1991, effective Dec. 1, 1991) (emphasis added).  Under Rule 53, as revised, special masters may now address pretrial and post-trial matters without a showing of exceptional conditions, so long as the circumstances of the appointment respect the conditions imposed by subsection (a)(1)(C).  <u>See</u> Fed. R. Civ. P. 53(c).

1    more than one franchisor, not all of which had settled separately.  The district

2    court did not address the first objection, but did direct issuance of a "notice of

3    exclusion," informing the franchisees that they were excluded from the class, and

4    that, because their claims had been settled, they would not be eligible for class

5    settlement funds unless they had also accepted payment in a capacity other than

6    as a Dismissed Plaintiff.

7        At the final approval stage, exclusion was again contested.  In response to

8    the claim that separate settlements were entered without the consent of the

9    franchisees, the district court instructed Class Counsel to send supplemental

10   notice informing all entities that had received a "notice of exclusion" that that

11   they could "make a claim for class settlement funds if [the settling entity] did not

12   have authority to settle and release [their] claims."  App'x at 7220.  Appellants

13   contend that this supplemental notice violated the Due Process Clause because it

14   was sent only after final approval of the Settlement Agreement, thereby

15   preventing the franchisees from opting out of or objecting to the settlement.  We

16   disagree.

17       "The standard for the adequacy of a settlement notice in a class action

18   under either the Due Process Clause or the Federal Rules is measured by

30

1  reasonableness." <u>Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.</u>, 396 F.3d 96, 113 (2d

2  Cir. 2005).  "There are no rigid rules to determine whether a settlement notice to

3  the class satisfies constitutional or Rule 23(e) requirements; the settlement notice

4  must fairly apprise the prospective members of the class of the terms of the

5  proposed settlement and of the options that are open to them in connection with

6  the proceedings." <u>Id.</u> at 114 (internal quotation marks omitted).

7      There was nothing unreasonable about the supplemental notice.  The

8  district court ordered these notices out of caution, after an objection raised at the

9  final approval stage.  There was no need then to provide an opt-out because all

10  entities receiving the notice were already presumed to be excluded from the

11  class.[8]  Nor was the notice needed to provide these entities with the opportunity

12  to object; after all, it was the objection of a "Dismissed Plaintiff" that caused the

13  supplemental notices to be sent in the first place.

---

[8] All entities identified as Dismissed Plaintiffs would have presumably been bound by the release contained in separate settlement agreements; but the validity of those agreements could always be challenged in a separate action.

31

1    The district court acted (or reacted) reasonably in a sprawling case with

2    many interested parties, in which neither the district court nor class counsel can

3    be expected to predict and preempt every issue that might arise.

4

5                                              **II**

6          In exchange for the $5.6 billion, the settlement releases all claims that

7    "accrue no later than five years after" the date on which appeals from the

8    settlement become final.  App'x at 3337 ¶ 31(a); <u>see also</u> <u>id.</u> at 3321-22 ¶ 3(ss).

9    This feature of the release is said to violate two related rules.

10         **Rule 23(a)(4).**  Newer merchants, who started accepting payment cards

11   only toward the end of the class period, are said to be inadequately represented

12   in violation of Rule 23(a)(4) because their interests diverged from those of the

13   class representatives, all of which had accepted Visa and/or MasterCard for the

14   full fifteen-year class period, and therefore had incentive to forgo five years (or

15   more) of future claims in exchange for the cash that would afford newer

16   merchants no more than a marginal recovery.

17         **Rule 23(e)(2)(D).**  Relatedly, it is contended that the future release results

18   in inequitable treatment among the class members in violation of Rule 23(e)(2)(D)

1    because it requires class members to forgo relief for the same length of time,

2    regardless of whether the class member was in business for fifteen years of the

3    class period, or for the final month only.

4        We have no occasion to decide these questions.  That is because the release

5    of claims provision contains a de-facto severability clause, providing that the

6    release "extend[s] to, but only to, the fullest extent permitted by federal law."

7    App'x at 3337 at ¶ 31(a).  This language ensures that the Settlement Agreement

8    will stand even if certain aspects of the release were to fall.  A holding as to the

9    proper scope of the release--i.e., whether the future release violates federal law--

10   can await a case in which the issue would directly affect the proceedings.

11

12                                   **III**

13       The district court granted $900,000 in service awards to the lead plaintiffs.

14   Appellants contend that such awards are prohibited by Supreme Court

15   precedent and that, even if they were generally permissible, the amount awarded

16   in this case was excessive.  We will address these two arguments in turn.

17

**A**

Service awards are likely impermissible under Supreme Court precedent. The Supreme Court has held that it was "decidedly objectionable" for cash allowances to be "made for the personal services and private expenses" of a creditor who brought suit on behalf of himself and other similarly situated bondholders. Trustees v. Greenough, 105 U.S. 527, 537 (1881). Such allowances, the Court reasoned, "would present too great a temptation to parties to intermeddle in the management of valuable property or funds in which they have only the interest of creditors, and that perhaps only to a small amount." Id. at 538.

Appellants argue that Greenough precludes the granting of service awards in this case, and in virtually all other cases[9]--as the Eleventh Circuit held in Johnson v. NPAS Solutions, LLC, 975 F.3d 1244 (11th Cir. 2020). True, Greenough's holding was not about persons designated as class representatives under the later-formulated class action rules; but it "involved an analogous litigation actor." Id. at 1259. Finally, appellants argue that although Rule 23

---

[9] Service awards are expressly allowed by statute for class representatives in private securities litigation. See 15 U.S.C. § 78u-4(a)(4).

post-dates <u>Greenough</u>, it makes no reference to service awards, and is thus

"irrelevant." <u>Id.</u>

But practice and usage seem to have superseded <u>Greenough</u> (if that is

possible). <u>See</u> <u>Melito v. Experian Mktg. Sols. Inc.</u>, 923 F.3d 85, 96 (2d Cir. 2019);

<u>Hyland v. Navient Co.</u>, 48 F.4th 110, 123-24 (2d Cir. 2022). And even if (as we

think) practice and usage cannot undo a Supreme Court holding, <u>Melito</u> and

<u>Navient</u> are precedents that we must follow.


**B**

Appellants contend that the service awards here are excessive, even if

service awards are otherwise deemed permissible, and must be reduced.

We have articulated no standard by which district courts can consider the

grant of service awards. District courts within this Circuit have generally relied

upon the following factors:

> [1] the existence of special circumstances including the
> personal risk (if any) incurred by the plaintiff-applicant
> in becoming and continuing as a litigant, [2] the time and
> effort expended by that plaintiff in assisting in the
> prosecution of the litigation or in bringing to bear added
> value (e.g., factual expertise), [3] any other burdens

sustained by that plaintiff ... and, of course, [4] the ultimate recovery.

Dial Corp. v. News Corp., 317 F.R.D. 426, 439 (S.D.N.Y. 2016) (ellipsis in original) (quoting Roberts v. Texaco, 979 F. Supp. 185, 200 (S.D.N.Y. 1997)). District courts also "often look to the sums awarded in similar cases, and compare the named plaintiff's requested award to each class member's estimated pro rata share of the monetary judgment or settlement." In re AOL Time Warner ERISA Litig., No. 02-cv-8853, 2007 WL 3145111, at *2 (S.D.N.Y. Oct. 26, 2007) (citations omitted). Given the Supreme Court's precedent in apparent opposition to the practice, and the standardless use of it nevertheless, it is unsurprising that, as has been said, "the decision to grant the [service] award, and the amount thereof, rests solely within the discretion of the Court." Dial, 317 F.R.D. at 439.

Here, the district court bestowed a total of $900,000 in service awards to the eight lead plaintiffs, with the two highest awards in the amount of $200,000. The district court justified these awards as follows:

- "Courts have approved similarly-sized service awards, even in cases with smaller settlement fund sizes and for cases that proceeded for a shorter duration of time."

1       • "Class Representatives spent an enormous amount of time and
2           resources in serving as named representatives in this complex
3           litigation that has spanned well over a decade."
4
5       • "There is no indication that any Class Representative assumed the
6           position or undertook the time and labor they did in anticipation of
7           being compensated."
8
9       • "Class Counsel does not seek service awards in excess of the service
10          awards requested and previously granted pursuant to the now-
11          vacated 201[2] Settlement Agreement, despite significant additional
12          efforts and time spent by the Class Plaintiffs in the six years since
13          that time, including time spent as a result of another round of
14          discovery."
15
16  App'x at 7455-56 (citations omitted).  Appellants challenge the amount of these

17  awards on four grounds.

18          First: Appellants argue that the lead plaintiffs cannot adequately represent

19  the class because the service awards dwarf the recovery for the lead plaintiffs

20  and the average class member.  As Appellants point out, certain lead plaintiffs

21  will receive service awards that are about 100 times as large as their expected

22  settlement recovery.  Thus, Photos Etc., with an estimated claim of about $2,000,

23  gets a service award of $200,000--more than 400 times the average recovery,

24  which is less than $500.  We recognize that certain district courts have relied on

1   these sorts of comparisons;[10] but we have never required their use, and we

2   decline to do so now.

3         Second: The district court credited each lead plaintiff for the full time it

4   spent on the litigation.  Appellants contend that, to avoid rewarding inefficiency,

5   the district court should have limited its consideration to the average number of

6   hours expended by the lead plaintiffs with the largest claims--CHS and Payless.

7   This idea is more creative than it is compelling, or workable.  We cannot say that

8   the district court's approach was an abuse of discretion.

9         Third: Payless reported that participation in this case cost it $70,000 in

10  salary and wages; and CHS reported $39,000.  Appellants contend that service

11  awards should have been directly tied to those losses, and that the district court's

12  failure to do so amounted to an abuse of discretion.  Service awards have been

13  limited to lost wages and out-of-pocket expenses in the context of private federal

---

[10] In 2014, Judge Gleeson questioned the requested service awards based on the reasons that Appellants now articulate.  See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig., 991 F. Supp. 2d 437, 448-49 (E.D.N.Y. 2014).  But Judge Gleeson's reservations are not law of the case, and Chief Judge Brodie, to whom the case was reassigned after Judge Gleeson's retirement, had no obligation to follow suit.

1   securities litigation.  See 15 U.S.C. § 78u-4(a)(4) (limiting service awards to

2   "reasonable costs and expenses (including lost wages) directly relating to the

3   representation of the class").  The district court in this antitrust case was not

4   bound by the limitation.

5       Fourth: Appellants contend that much of the work that the lead plaintiffs

6   performed was geared toward obtaining legislative reform for the injunction

7   class, and that those efforts should have been excluded in arriving at a service

8   award for the damages class.  Given that the basis for any service award in a

9   class action is at best dubious under Greenough, and that, unsurprisingly,

10  calculation of such an award is standardless, it is difficult to find traction for a

11  ruling that this award is an abuse of discretion.  In any event, among the variety

12  of factors considered, the district court made no more than passing reference to

13  time that lead plaintiffs spent on legislative activities.  But the point here is valid.

14  The class should not pay for time spent lobbying for changes in law that do not

15  benefit the class.  We direct the district court to reduce the award to the extent its

16  size was increased because of time spent lobbying.

17

**IV**

The award of attorneys' fees exceeds half a billion dollars. The district court acknowledged that the "sheer size" of this award resulted in "apparent unfairness," but found that "public policy interests weigh in favor of a substantial award." In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig., No. 05-md-1720, 2019 WL 6888488, at *21 (E.D.N.Y. Dec. 16, 2019) ("Fee Opinion"). True, the amount is breathtaking; but the only question for us is whether the district court abused its discretion in awarding such fees. We cannot say that it did.

**A**

It is well-established under the common fund doctrine that "attorneys who create a fund for the benefit of a class of plaintiffs are entitled to reasonable compensation from that fund." Victor v. Argent Classic Convertible Arbitrage Fund L.P., 623 F.3d 82, 84 (2d Cir. 2010). This reasonableness principle has deep roots in Supreme Court jurisprudence, stemming from the decisions in Greenough and Central Railroad & Banking Co. v. Pettus, 113 U.S. 116 (1885). While this Circuit's approach to calculating fees has "evolved in a somewhat

1    circuitous fashion," <u>Goldberger v. Integrated Res., Inc.</u>, 209 F.3d 43, 48 (2d Cir.

2    2000), we established at the turn of this century that district courts could

3    calculate fees using either the lodestar amount, which is the reasonable hourly

4    rate multiplied by the hours reasonably expended, or a percentage of the fund,

5    <u>see</u> <u>id.</u> at 50.

6          Regardless of which method is chosen, the analysis is effectively the same.

7    In calculating a reasonable common fund fee, district courts are to be guided by

8    the following factors: "(1) the time and labor expended by counsel; (2) the

9    magnitude and complexities of the litigation; (3) the risk of the litigation . . . ;

10    (4) the quality of representation; (5) the requested fee in relation to the

11    settlement; and (6) public policy considerations." <u>Id.</u> (alteration in original)

12    (citation omitted). What is more, district courts that use the percentage method

13    routinely keep the lodestar in sight, heeding <u>Goldberger</u>'s advice to "requir[e]

14    documentation of hours as a cross check on the reasonableness of the requested

15    percentage." <u>Id.</u> (internal quotation marks omitted).

16          The district court here followed the trend in this Circuit by applying the

17    percentage method. <u>See</u> <u>Fee Opinion</u>, No. 05-md-1720, 2019 WL 6888488, at *9,

18    *24. Class Counsel had requested 9.56% of the settlement fund, which amounted

1   to about $537 million.  <u>See</u> <u>id.</u> at *3.  The district court found that the requested

2   award was supported by each of the <u>Goldberger</u> factors, except for the quality of

3   representation.  <u>See</u> <u>id.</u> at *10-21.  While the district court found that Class

4   Counsel did "a tremendous job in litigating this case," <u>id.</u> at *15, it explained that

5   "the low percentage of recovery in comparison to the total alleged damages

6   figure weighs slightly against granting the full amount of Class Counsel's

7   requested fee," <u>id.</u> at *17.[11]

8        The district court then conducted a lodestar cross-check, dividing the

9   percentage fee requested ($537 million) by the lodestar ($215 million).[12]  It

10   concluded that the resulting multiplier of 2.5 fell "well within a range of

11   multipliers that have been deemed acceptable, especially in complex actions."

12   <u>Id.</u> at *22 (citing <u>Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.</u>, 396 F.3d 96, 123 (2d

---

[11] The district court noted that the $5.6 billion settlement figure is less than the interchange fees that one retailer--Wal-Mart Stores, Inc.--paid in a single decade. <u>See</u> <u>id.</u> at *16.

[12] The district court ultimately adjusted the lodestar amount to about $213 million, after deducting time spent exclusively on injunctive relief after the remand.  <u>See</u> <u>id.</u> at *24.

1  Cir. 2005) (finding a multiplier of 3.5 to be reasonable in a megafund antitrust

2  action)).

3      The district court then decided to reduce the requested percentage by .25%

4  to account for the relatively small settlement figure, as a percentage of the

5  amount of damages reasonably claimed.  See id. at *24.  This resulted in an

6  award of 9.31% of the common fund, or roughly $523 million.  See id.  The final

7  lodestar multiplier was 2.45.  See id.

8

9                                    **B**

10     Appellants first challenge the roughly 630,000 hours that Class Counsel is

11  found to have expended on the case.  Specifically, Appellants contend that the

12  district court abused its discretion by failing to either: (1) exclude from its

13  analysis all pre-remand time--about 500,000 hours--because of Class Counsel's

14  conflicting representation of the damages and injunction class; or (2) limit pre-

15  remand time to exclude time that benefitted the injunction class only.  Appellants

16  argue that the district court's failure to adjust the pre-remand time in either of

17  these ways allowed inflated hours to distort its Goldberger review (specifically,

43

1    the time and labor factor) and its lodestar cross-check (by juicing up the

2    lodestar).

3

4                                 **1**

5         Appellants' first argument seeks a categorical exclusion.  That is,

6    Appellants claim that Class Counsel should not have received credit for <u>any</u> pre-

7    remand work, since attorneys cannot be compensated for their simultaneous

8    representation of competing parties.[13]  We are unpersuaded.

9         Appellants' argument hinges on <u>Silbiger v. Prudence Bonds Corp.</u>, 180

10   F.2d 917 (2d Cir. 1950) (L. Hand, <u>J.</u>), in which the district court awarded

11   attorney's fees from a bankruptcy reorganization in which the attorney

12   represented two classes of bondholders with directly opposing interests, such

13   that one class would be "certain to lose by the success of the [other]."  <u>Id.</u> at 920.

14   Judge Hand noted that the "usual consequence" of this sort of conflicting

---

[13] Appellants also summarily state that even if the nature of the conflict alone does not preclude recovery for pre-remand work, "[o]f course, when an attorney creates a situation in which it is impossible to accurately bill separate clients . . . the remedy is to preclude the recovery of any attorney's fees from either client." Gnarlywood Br. at 43.  But Appellants cite no authority for this proposition.

1 representation was that the offending attorney would be "debarred from

2 receiving any fee from either [client], no matter how successful his labors."  Id.

3      It is unclear whether that rule applies in the class action context.  See In re

4 Austrian & German Bank Holocaust Litig., 317 F.3d 91, 104 n.17 (2d Cir. 2003)

5 ("We do not believe that the strict approach taken in Silbiger, which was not a

6 class action, requiring forfeiture of at least one-third of the attorney's fee, is

7 applicable in the context of the pending litigation." (citation omitted)).[14]  In any

8 event, Silbiger noted an "exception" to the general rule: "it is reasonable not to

9 impose an entire forfeiture of the allowance," when the award "comes in no part

10 out of any group that [could] have been prejudiced by the attorney's divided

11 allegiance."  180 F.2d at 921.  This language provides the "salient distinguishing

12 feature relied upon in Silbiger."  New York, N.H. & H.R. Co. v. Iannotti, 567 F.2d

13 166, 176 (2d Cir. 1977).

---

[14] Silbiger concluded that there needed to be some "penalty" for the attorney's failure to notify the court of the conflict, and the case was remanded with instructions to reduce the fee by at least one-third.  180 F.2d at 919, 921. Appellants do not argue for a similar partial forfeiture--at least not as a penalty for conflicted representation.

45

1    The exception applies with full force to this case. All fees will come out of

2    the common fund created for the damages class--<u>i.e.</u>, the class which always

3    stood to benefit from Class Counsel's conflicted representation. The injunction

4    class will pay none of it. So total forfeiture is neither required nor appropriate.[15]

5

6                                            **2**

7    Alternatively, Appellants contend that if Class Counsel is compensated for

8    time spent prior to remand, there should be exclusion of hours spent pursuing

9    injunctive-related relief--<u>e.g.</u>, time pursuing extra-judicial legislative changes,

10   and supporting third-party investigations and litigations. This exclusion, we are

11   told, is not intended to be a penalty for conflicted representation; instead, it seeks

12   to ensure that the damages class does not pay more than its fair share. This

---

[15] This analysis is unaffected by Appellants' attempt to cast Class Counsel's representation as an "ethical violation." Gnarlywood Br. at 48. Class Counsel never violated the New York Rules of Professional Conduct, <u>see</u> <u>Fee Opinion</u>, No. 05-md-1720, 2019 WL 6888488, at *18, and we expressly declined to "impugn the motives or acts of class counsel" on the last appeal, <u>In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.</u>, 827 F.3d at 234. Indeed, it was only in the context of a settlement (where relief for one party could be used as a bargaining chip to enhance relief for another) that a conflict between the classes arose. Class Counsel could have represented both classes without any conflict had the case proceeded to trial and to a final disposition.

1    argument has some appeal; but we conclude that the district court acted within

2    its discretion when it decided to include the pre-remand time in its entirety.

3        Appellants rely on Hensley v. Eckerhart, 461 U.S. 424 (1983), which

4    considered whether prevailing counsel can be compensated for time spent on

5    unsuccessful claims under a fee-shifting statute providing that "the court, in its

6    discretion, may allow the prevailing party . . . a reasonable attorney's fee." Id. at

7    426 (quoting 42 U.S.C. § 1988) (emphasis added). Hensley observed that when a

8    plaintiff "present[s] in one lawsuit distinctly different claims for relief that are

9    based on different facts and legal theories," id. at 434, "counsel's work on one

10   claim will be unrelated to his work on another claim" and, thus, "work on an

11   unsuccessful claim cannot be deemed to have been expended in pursuit of the

12   ultimate result achieved," id. at 435 (internal quotation marks omitted).

13   Appellants latch on to this statement.

14       But the Supreme Court went on to consider cases in which "the plaintiff's

15   claims for relief will involve a common core of facts or will be based on related

16   legal theories." Id. In those cases, the Court reasoned, "[m]uch of counsel's time

17   will be devoted generally to the litigation as a whole, making it difficult to divide

47

the hours expended on a claim-by-claim basis." Id.  As a result, attorneys in such

cases may still "recover a fully compensatory fee." Id.

Hensley's reasoning is instructive here.  In considering the time and labor

expended on litigation (the first Goldberger factor), it makes little sense to credit

counsel for work performed on behalf of a class that it no longer represents.  So if

the work done on behalf of the injunction class could all be teased apart from the

work done for the damages class, the district court should have done so.  But that

was not an option.  The injunctive and monetary claims were interwoven, such

that "the majority of Class Counsel's work leading up to the 201[2] Settlement

Agreement would have been aimed generally at proving antitrust violation,

regardless of the particular remedy sought or class represented." Fee Opinion,

No. 05-md-1720, 2019 WL 6888488, at *11.

Under the circumstances, "[t]here was simply no need for the district court

to engage in an artificial distribution of attorney time between [monetary] and

[injunctive] claims." Dague v. City of Burlington, 935 F.2d 1343, 1359 (2d Cir.

1991) (internal quotation marks omitted), rev'd in part, 505 U.S. 557 (1992).

1                                      **C**

2       Finally, Appellants raise three challenges to the lodestar multiplier, which

3   was pegged at 2.45.

4       First: Appellants contend that Class Counsel artificially inflated the

5   lodestar by failing to weed out the time spent working for injunctive-related

6   relief.  Had this time been excluded, and the lodestar lowered, the multiplier

7   would have exceeded 2.45 and might have fallen out of a range deemed

8   reasonable.  As explained above, however, the district court acted within its

9   discretion when it declined to exclude hours spent solely on behalf of the

10  injunction class, which was in any event small in number relative to the 630,000

11  total hours.

12      Second: Appellants challenged the district court's comparison of the

13  lodestar multiplier in this case to multipliers found reasonable in other similar

14  actions.  See Fee Opinion, No. 05-md-1720, 2019 WL 6888488, at *22.  But in Wal-

1    Mart, we endorsed the use of lodestar comparators, see 396 F.3d at 123, which

2    would seem necessary to avoid picking numbers arbitrarily.[16]

3         Third: The district court justified the lodestar multiplier by reference to the

4    "significant litigation risk."  Fee Opinion, No. 05-md-1720, 2019 WL 6888488, at

5    *22.  According to Appellants, that was an abuse of discretion because the risks

6    identified--e.g., the challenge of proving antitrust standing--are not of the sort

7    that we deemed applicable in Fresno County Employees' Retirement Association

8    v. Isaacson/Weaver Family Trust, 925 F.3d 63 (2d Cir. 2019).  That case,

9    Appellants posit, relied exclusively on the risk generated from counsel's

10   devotion of resources to a specific case while forgoing other paying work.

11        Appellants' reading of Fresno County is too narrow.  The true risk we

12   identified in Fresno County was the risk that a case taken on contingency will

13   fail:

---

[16] According to Appellants, such comparisons go beyond the factors laid out in Goldberger, which characterized the practice of fixing a "benchmark" as an "all too tempting substitute for the searching assessment that should properly be performed in each case."  Goldberger, 209 F.3d at 52.  But Goldberger eschewed benchmarks only for the percentage of the common fund--i.e., it counseled against pegging the percentage at 25%.  It said nothing about applying benchmarks to the lodestar multiplier.

> The plaintiff class is ... appropriately charged for contingency risk where such risk is appreciable because the class has benefited from class counsel's decision to devote resources to the class's cause at the expense of taking other cases. That is, because class counsel has decided to represent the plaintiff class, class counsel's ability to freely represent other clients is limited *by the risk she has assumed that the class's cause will be unsuccessful.*

925 F.3d at 70 (emphasis added). The district court reasonably concluded that the significant litigation risk present in this case meant that class counsel had taken on a venture with a high risk of failure, and that the risk should be compensated.

Finally: Appellants argue that the straight lodestar--i.e., the figure without any multiplier--is the presumptively reasonable fee in cases (such as this one) initiated under fee-shifting statutes.[17] But we rejected that same argument in Fresno County, explaining that "an attorney seeking a fee after establishing a common fund will receive a fee calculated using either the lodestar method or a percentage-of-the-fund method, which can yield a fee that is less than, equal to,

---

[17] The case was filed under the Sherman Act, which provides that persons "injured in [their] business or property by reason of anything forbidden in the antitrust laws . . . shall recover threefold the damages . . . sustained, and the cost of suit, including a reasonable attorney's fee." 15 U.S.C. § 15(a).

51

1    or greater than the lodestar fee." Id. at 68.  We further explained that where, as

2    here, "statutory fees and the common-fund doctrine collide, the common-fund

3    doctrine operates autonomously from fee-shifting principles." Id. at 69.  The

4    district court therefore acted within its discretion when it granted Class Counsel

5    a fee award that more than doubled the lodestar.

6                                                    **CONCLUSION**

7                   For the foregoing reasons, we AFFIRM in all respects the district

8    court's orders, to the extent they constituted a final judgment, with the exception

9    that we direct the district court to reduce the service award to class

10   representatives to the extent that its size was increased by time spent in lobbying

11   efforts that would not increase the recovery of damages.  We make no ruling as

12   to how damages should be allocated as between branded oil companies and their

13   branded service station franchisees, the reasonableness of the special master's

14   ultimate findings, or the legality of releasing an as-of-yet hypothetical future

15   claim; such issues must wait for a developed factual record and a final judgment,

16   and, as to the breadth of the releases, the assertion by the defendants in a future

1    litigation of a claim of release which is challenged on the ground that

2    interpreting the release so broadly violates federal law.[18]

---

[18] This panel will retain jurisdiction over any further appeals in this case (though not any appeal from the grant or denial of injunctive relief).